UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**HEIDI ANDERSON, et al.,**
    **Plaintiffs,**

  v.                                                            Case No. 20-C-1305

**DR. MARK HANSEN, et al.,**
    **Defendants.**

---

## DECISION AND ORDER

Heidi Anderson alleges that the Elmbrook School District banned her from District property because she exercised her First Amendment right to express opinions at a school board meeting. The ban prevents her from attending future school board meetings, visiting her children's school, and from voting in person at her polling place unless she first obtains permission to enter District property from its superintendent, defendant Dr. Mark Hansen, or the principal of her children's school. Before me now is Anderson's motion to preliminarily enjoin the ban. *See* Fed. R. Civ. P. 65(a).

## I. BACKGROUND

Anderson is the mother of two children who attend schools within the Elmbrook School District. On August 11, 2020, the Elmbrook Board of Education held a public meeting to address the District's procedures for dealing with the COVID-19 pandemic. One of the measures under consideration was a requirement that all children attending school in person wear masks to minimize the transmission of the virus through respiratory droplets. Anderson attended the meeting in person and signed up to speak about the proposal.

Anderson opposes mask mandates in general, and she was against the District's proposal to require children to wear masks at school. The Board allowed her to express her views during the time allotted for citizen comments about the proposal. She was given two minutes to speak. When she was called to the podium, she delivered remarks that lasted over eight minutes. During her remarks, Anderson gave a variety of reasons for opposing the mask proposal. Some reasons related to her faith. Anderson is Christian, and she believes that wearing masks is inconsistent with the Christian faith. During her remarks, she expressed her view that "[s]ix-foot distance and masks are a Pagan ritual of Satanic worshipers." ECF 6-2 at 2. She stated that because her family is Christian and does not practice Satanic worship, her children are not made to "stand six feet apart from each other with facial coverings." *Id.*

Towards the end of her remarks, Anderson turned her attention to Dr. Mushar Hassan, a medical doctor and school board member whom the Board had designated as its medical liaison:

> [Mrs. Anderson:] Dr. Mushar, and I hope I'm saying this correctly, you are not the right choice to be the Board liaison. You do not practice in infectious disease, you have political leaning contrary to the will of this district. You online state that you're a big Obama fan and you comply mentally with his control philosophy, and you have publicly slammed our president Trump online. I'm finishing. As a leader in the Islamic community—
>
> [Interjection by School Board President:] Heidi, we have to avoid defamatory comments.
>
> [Mrs. Anderson:] This is not defamatory. I'm stating facts. [To Dr. Hassan:] You are a leader in the Islamic community are you not, and a leader on the Board—
>
> [Board President:] Heidi.
>
> [Mrs. Anderson:] O.K. Well listen, my kids are Christians. They are not subject to wearing face coverings. Christian children should not be forced

to wear face coverings any more than children who are Islamic or Muslim should be forced to, as you've put it, "be subject to the American style sexualization of children," and have to wear less clothing than you're comfortable with your children wearing.

. . . .

[To the Board generally:] You are employed by the people of Brookfield and Elm Grove, you are elected to serve us. And the Elmbrook School administration works at our pleasure. You do not work for Madison, or any other unelected entity—our government is of the people, by the people, and for the people. This is one country, one nation under God, and we look to God for these answers when we can't figure it out and I would suggest that you all do that. There is a wonderful prayer that he taught us to pray, it's called the Lord's prayer, and you can find it in your Bible. Thank you for your time.

ECF No. 6-2 at 3–4.

The board meeting was broadcast over the Internet. Anderson later learned that her comments had sparked controversy online. Some observers described her remarks as "ignorant," "Islamophobic," and "insensitive." Aff. of Heidi Anderson ¶ 14. In response to these comments, the Elmbrook School District contacted community members and told them that the District condemned Anderson's remarks. *Id.* ¶ 16. The District also "censored" a portion of Anderson's comments, *id.*, which I assume means that the District edited the archived video recording of her comments to remove the comments she directed towards Dr. Hassan. Further, on August 12, 2020, the day after the meeting, the School Board published a statement on its website in which it apologized to Dr. Hassan and expressed its view that Anderson's statement was unacceptable. *See* District Response to Citizen's Comments (Aug. 12, 2020).[1] When Anderson objected to the

---

[1] The District's statement is not part of the record, but the plaintiff, in her brief, cited a web page where the statement can be viewed. *See* Br. in Supp. at 4 (citing

District's actions, Superintendent Hansen "demanded" to meet with her. Aff. of Heidi Anderson ¶ 17. She refused to meet with Hansen because she did not feel comfortable doing so.

After Anderson declined to meet with Hansen, he wrote a letter to her on behalf of the District and had a process server personally deliver it to her. The letter is dated August 13, 2020, and it was copied to the Chief of the City of Brookfield Police Department. The letter informed Anderson that she would not be allowed on any District property without the prior approval of either the superintendent or the principal of her children's school. Because the letter is central to the plaintiff's claim, I reproduce it in full:

> Dear Mrs. Anderson:
>
> The District is responsible for maintaining a safe and orderly environment for all persons who are on District property and for preventing the disruption of its operations. This includes, but is not limited to, not tolerating the harassment of individuals based on their race, religion or membership in any other protected class. Your recent conduct at the August 11, 2020 Board of Education meeting crossed the boundaries of acceptable and appropriate conduct by any person on District property.
>
> You are hereby advised that effective immediately, you are not allowed on any District property or to be present in any District facility without the prior approval of myself, as Superintendent of the District or the principal of the school where your children attend school. If you fail to comply with this directive, you will be considered a trespasser on District property and the District will enlist the assistance of local law enforcement in having you removed from District property for trespassing.
>
> In addition, if you are permitted to be on District property and you engage in conduct that harasses other persons and/or disrupts the efficient operations of the District, you will be required to leave the premises immediately. Should you fail to comply with a directive that you leave the premises because of your disruptive or harassing conduct, you will be

---

https://www.elmbrookschools.org/news-details/~post/district-response-to-citizens-comments-20200812).

considered a trespasser and law enforcement will be contacted to have you removed from District property.

It is truly unfortunate that your conduct has forced the District to establish these protocols. However, the District will not tolerate any further incidents of the types of behavior that you engaged in during the August 11, 2020 Board meeting.

I trust that no further action will be needed but the District is committed to maintaining a safe and orderly environment for all persons on District property and will take all legal action available to it including, but not limited to, filing a criminal complaint against you should you violate these directives.

Sincerely,

Mark D. Hansen, Superintendent

ECF No. 6-3.

Under the District's policy as stated in the letter, Anderson may not attend a Board of Education meeting or participate in events at her children's school, including her daughter's dance recitals, without first obtaining permission from the superintendent or the school principal. Moreover, because Anderson's polling place is located inside an elementary school in the District, she may not vote in person without first receiving permission from the superintendent or a school principal.

After being served with the letter, Anderson commenced this action under 42 U.S.C. § 1983. She alleges that the policy set forth in the letter amounts to discrimination against her for exercising her First Amendment right to free speech at the school board meeting. She seeks a preliminary injunction preventing the District or Superintendent Hansen from enforcing the policy against her pending the final resolution of this suit. The defendants oppose the motion.

5

## II. DISCUSSION

To obtain a preliminary injunction, the plaintiff must first show that: (1) without an injunction, she likely will suffer irreparable harm before final resolution of the case; (2) traditional legal remedies would be inadequate; and (3) she has some likelihood of success on the merits. *E.g., Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). If the plaintiff satisfies these elements, the court must then weigh the harm the plaintiff will suffer without an injunction against the harm the defendants will suffer with one. *Id.* This assessment is made on a sliding scale: The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in her favor; the less likely she is to win, the more need it weigh in her favor. *Id.* Finally, the court must ask whether the preliminary injunction is in the public interest, which means considering what effect an injunction will have on non-parties. *Id.* Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted. *Id.*

**A.      Likelihood of Success on the Merits**

The plaintiff contends that the District's policy violates her First Amendment right to free speech. She contends that the policy was created in direct response to the contents of the statement she gave during the school board meeting, and that therefore it is an impermissible form of content discrimination. The defendants contend that their policy does not infringe the plaintiff's First Amendment rights because it was issued in response to her "inappropriate and unjustifiable display of religious intolerance." Br. in Opp. at 2.

At the outset, I note that this case does not require me to determine whether Anderson's comments towards Dr. Hassan displayed religious intolerance or were

inappropriate, hateful, or offensive. For even if they were, the First Amendment would protect the plaintiff's right to make them. *See Matal v. Tam*, __ U.S. __, 137 S. Ct. 1744, 1764 (2017) ("Speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'"); *id.* at 1765 (Kennedy, J., concurring) (recognizing that, with few exceptions, "it is a fundamental principle of the First Amendment that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys"); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). Thus, basic First Amendment principles prevent the District from subjecting the plaintiff to adverse action for no other reason than it considered her speech at the board meeting intolerant, offensive, or hateful.

This is not to say that the First Amendment gives the plaintiff the right to express religiously intolerant views wherever and whenever she likes. The government may place reasonable time, place, and manner restrictions on speech and regulate its own meetings. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Surita v. Hyde*, 665 F.3d 860, 869–71 (7th Cir. 2011). Thus, the District could have enforced its two-minute time limit for citizen comments and cut the plaintiff off once she exceeded the limit. *See Surita*, 665 F.3d at 871. Moreover, if the plaintiff's comments to Dr. Hassan amounted to a personal attack rather than an attempt to express a viewpoint on the mask proposal, the board members could have told the plaintiff to keep her remarks focused on the issues or taken other action to prevent her from continuing to speak on topics that were not

7

germane to the board meeting. *See id.* (noting that city council can exclude person from speaking at meeting if the person engages in disorderly conduct, is belligerent, or strays from an announced limited topic).

Here, however, the District's policy cannot be viewed as a reasonable time, place, and manner restriction or another permissible regulation of speech. The policy is not reasonably tailored to prevent the plaintiff from exceeding time limits, veering off topic, or being belligerent at future board meetings. Instead, the policy flatly bans the plaintiff from entering school property for any purpose without permission. This ban has no rational connection to enforcing restrictions on citizen comments at board meetings and thus can only be viewed as a way of punishing the plaintiff for the comments she made during the prior board meeting.

The defendants contend that their policy is designed to ensure that religious harassment is not tolerated on school property. They cite Title VII of the Civil Rights Act of 1964 and note that an employer may not engage in discrimination on the basis of religion or foster a hostile work environment. But the plaintiff was not acting as an employee of the District when she spoke at the board meeting. She was offering her personal views as a concerned citizen at the time and place designated for her to do so. The employment laws simply do not apply to comments made by a member of the public at a school board meeting.

In any event, to the extent the District wanted to make clear that it did not condone the plaintiff's viewpoint, all it had to do is make a public statement denouncing her remarks—which it did in the statement it published on its website on August 12, 2020. *See, e.g., Matal*, 137 S. Ct. at 1757 (recognizing that the Free Speech Clause does not

8

regulate government speech). But the District's policy goes beyond making clear that the District does not condone religious intolerance or harassment. It penalizes the plaintiff based on the content of her prior protected speech.

Perhaps the District is arguing that the policy is a prophylactic measure designed to prevent Anderson from entering onto school property and harassing others based on their religion. But this justification for the policy would be preposterous. It is not rational to think that because Anderson made religiously intolerant statements during her citizen comments at a public board meeting that she will roam the halls of the Elmbrook schools and harass those she encounters on the basis of their religion. Moreover, in the unlikely event Anderson does engage in such behavior, the District could intervene at that time. As the defendants note in their brief, no person has an unlimited right to be present on school property, *see* Wis. Stat. § 120.13(35), and the District has adopted a general rule that allows building administrators to eject disruptive persons from school grounds, *see* Elmbrook School Board Policy 1250. Thus, if Anderson causes a disruption on school property, the District could have her removed even if the policy at issue in this case were not in force. This shows that the policy serves no rational purpose other than to punish Anderson for having expressed views with which the District disagrees.

For these reasons, I conclude that the plaintiff has a very high likelihood of success on the merits of her First Amendment claim. *See Surita*, 665 F.3d at 871 ("Penalties for speech protected under the First Amendment are forbidden.").

**B.     Irreparable Harm/Lack of Adequate Traditional Legal Remedy**

The plaintiff contends that the District's policy causes her several forms of irreparable harm, for which no adequate legal remedy exists: (1) it prevents her from attending and speaking at future school board meetings, which are held on school property, Aff. of Heidi Anderson ¶ 21; (2) it prevents her from routine parental involvement in her children's schooling and from attending her children's school functions, such as her daughter's dance recitals, *id.* ¶ 22; and (3) it prevents her from voting in person at her polling place, which is located inside an Elmbrook elementary school, *id.* ¶¶ 19, 23.

The defendants do not dispute that preventing the plaintiff from entering school grounds for these purposes would cause her irreparable harm for which there would be no adequate legal remedy. However, they contend that until the plaintiff asks permission to enter District property and is denied access, she cannot demonstrate that the policy has caused her these harms. *See* Br. in Opp. at 2. But to satisfy the irreparable-harm requirement, a plaintiff does not have to show that the harm she seeks to prevent has already been inflicted. *See Whitaker By Whitaker v. Kenosha Unified School District No. 1*, 858 F.3d 1034, 1045 (7th Cir. 2017). Nor must the plaintiff show that, absent an injunction, the harm is certain to occur. *Id.* Instead, what the plaintiff must show is that irreparable harm is "likely." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). This means showing that there is "more than a mere possibility that the harm will come to pass." *Id.*

On the present record, I conclude that the plaintiff has shown more than a mere possibility that the District's policy will prevent her from accessing school property to attend board meetings, participate in school events involving her children, and vote in

10

person. The letter in which Superintendent Hansen announces the District's policy contains no criteria explaining when the plaintiff might be granted permission to enter school property. Moreover, the defendants have not stated that they would allow the plaintiff to enter school property for the purposes identified above, or for any purpose, if she sought permission.[2] For these reasons, I find that it is more than possible that if the plaintiff asked for permission to enter school property to attend or speak at a board meeting, attend events involving her children, or vote in person, such permission would be denied.

In any event, I also conclude that forcing the plaintiff to obtain permission before entering school property is itself a form of irreparable harm. Although, as the defendants point out, no person has an absolute right to enter school property, parents are generally allowed to enter school property without first asking permission to do things such as pick up their children and attend recitals and school plays. And the general public may enter a polling place located on school property without first asking permission. The District's policy thus singles the plaintiff out in a way that stigmatizes and demeans her. *See* Aff. of Heidi Anderson ¶ 24 (plaintiff avers that she finds the permission requirement demeaning). This is a form of irreparable harm. *See Whitaker by Whitaker*, 858 F.3d at

---

[2] In their response brief, the defendants note that "[t]he District has left open the option for Mrs. Anderson to request permission to enter the District's property and has given no indication that she would not be admitted under appropriate conditions." Br. in Opp. at 16. But the District does not explain what the "appropriate conditions" might be or represent that it would grant permission to enter for the purposes identified in the text. Nor does the District submit an affidavit from Superintendent Hansen or another District official affirming that the statement in the brief is accurate. Thus, the District offers no evidence from which I could reasonably draw the inference that it would grant the plaintiff permission to enter school property if she requested it.

11

1045 (recognizing that government action that stigmatizes plaintiff poses danger of irreparable harm). As for the adequacy of traditional legal remedies, it is true that damages for emotional injuries may be awarded in tort actions. But such damages are not necessarily adequate. Torts generally cannot be predicted in advance, and so damages are the only means available for compensating tort victims for emotional injury. But when prospective relief is available to prevent anticipated harm, it is the preferred remedy, for a person would rather avoid emotional harm than be compensated for having suffered it. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008) (noting that people ordinarily would not trade their well-being for a sum of money). Thus, the Seventh Circuit has recognized that when emotional harm is foreseeable and can be prevented, an injunction is the preferred remedy, even if damages could be awarded after the harm occurred. *Id.* at 1046.

For these reasons, I conclude that the plaintiff has shown that, without a preliminary injunction, she would suffer irreparable harm and that traditional legal remedies would be inadequate.

**C.    Balance of Harms**

Because the plaintiff has shown a likelihood of success on the merits, that traditional legal remedies would be inadequate, and that she is likely to suffer irreparable harm in the absence of a preliminary injunction, I must balance the irreparable harm the plaintiff is likely to suffer without the injunction against any harm the defendant would suffer if the injunction were granted. Here, I note that the defendants have not claimed that they would suffer any harm at all if an injunction were granted. Thus, the balance entirely favors the plaintiff. I add that, under the sliding scale, because the plaintiff has a

12

very high likelihood of success on the merits, the defendants would have to show that an injunction would cause them substantial harm before the balance could favor them. Because the defendants do not claim that an injunction would harm them at all, and because I cannot envision any way in which an injunction could harm them, I find that the balance of harms supports the injunction.

**D.    Public Interest**

I also must consider where the public interest lies. In First Amendment cases, the public interest will usually favor the issuance of an injunction, for "it is always in the public interest to protect First Amendment liberties." *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (internal quotation marks omitted). Moreover, the injunction does no more than allow the plaintiff to enter school property for the same reasons and on the same terms as other parents and members of the public. As discussed above, there is no reason to think the plaintiff would cause a disturbance if allowed on school property. Thus, I find that granting the preliminary injunction would serve the public interest.

**E.    Bond**

Finally, I must consider whether the plaintiff is required to post a bond under Federal Rule of Civil Procedure 65(c), which provides that the court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." However, if there is "no danger that the opposing party will incur any damages from the injunction," then the court may dispense with the bond. *See Habitat Educ. Ctr v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). As I discussed

13

in connection with the balance of harms, the defendants do not claim that they would suffer harm if an injunction were granted. Nor can I envision any way in which the defendants could be harmed by an injunction. Further, in her motion for a preliminary injunction, the plaintiff requested that any bond be set to a nominal amount, *see* ECF No. 5 at 2, and the defendants did not oppose her request. For these reasons, I conclude that there is no danger of the defendants' incurring costs or damages from the injunction, and therefore I will not require the plaintiff to post a bond.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for a preliminary injunction is **GRANTED**. The Elmbrook School District, Dr. Mark Hansen, as well as their agents and employees and anyone who is in active concert or participation with them, are hereby preliminarily enjoined from requiring Mrs. Anderson to obtain permission from Dr. Hansen, a school principal, or any other person before entering District property for a purpose that ordinarily does not require advance permission. Mrs. Anderson shall be permitted to access District property on the same terms and conditions that apply to all other members of the public who have children enrolled in District schools. In other words, the defendants and their agents are preliminarily enjoined from enforcing the policy set out in the second paragraph of Dr. Hansen's letter to Mrs. Anderson of August 13, 2020.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2020.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge
