# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**HEIDI ANDERSON, et al.,**
          **Plaintiffs,**

      **v.**                                   **Case No. 20-C-1305**

**DR. MARK HANSEN, et al.,**
          **Defendants.**

---

## DECISION AND ORDER

On August 11, 2020, Heidi Anderson attended a meeting of the Elmbrook School District Board of Education to express her views on the District's proposed response to the COVID-19 pandemic. During the time allotted for public comments, Anderson went to the podium and stated that she was opposed to having her children wear masks and practice social distancing, which, she stated, are practices associated with "Satanic worship." Compl. Ex. 1 at 2. As part of her comments, Anderson addressed one of the Board members, Dr. Mushar Hassan, and told him he was not the "right choice" to be the Board's medical liaison because, among other reasons, he was "a leader in the Islamic community" and might prefer to have the District's children wear face coverings. *Id.* at 3–4. After the meeting was over, the District's superintendent, Dr. Mark Hansen, wrote Anderson a letter in which he informed her that, because of her comments at the meeting, she could no longer enter District property, including her daughters' school, unless she first obtained permission from the superintendent or the principal of the school.

In response, Anderson commenced this action on behalf of herself and her daughters against Superintendent Hansen and the District under 42 U.S.C. § 1983. Primarily, she alleged that the ban was imposed in violation of her First Amendment right

to free speech, and she sought an injunction against the ban's enforcement. However, she also alleged that the District violated her First Amendment rights by removing the portion of her comments addressed to Dr. Hassan from the archived video of the school board meeting, and by deleting the comments she made on the District's Facebook page after the meeting.

In a prior order, I granted Anderson's motion for a preliminary injunction against the ban, finding that she was likely to succeed on her claim that the ban violated the First Amendment. *See Anderson v. Hansen*, __ F. Supp. 3d __, 2020 WL 5748743 (E.D. Wis. 2020). After I issued that order, Superintendent Hansen sent Anderson a letter in which he stated that the District was withdrawing the ban. The defendants then filed a motion to dismiss the complaint. The motion contends that, because the ban has been withdrawn, the plaintiffs' claim for a permanent injunction is moot. The motion further contends that because the District has made a full recording of Anderson's comments available on the internet, her claim that the District censored the video is moot. Finally, the motion contends that the complaint does not state any other viable federal claim, and that therefore, to the extent the complaint raises claims that are not moot, it should be dismissed on the merits under Federal Rule of Civil Procedure 12(b)(6). I consider these matters below.

## I. BACKGROUND

Anderson is the mother of two children who attend schools within the Elmbrook School District. On August 11, 2020, the Elmbrook Board of Education held a public meeting to discuss precautions for dealing with the COVID-19 pandemic, including requiring children to wear masks and to social distance. Anderson attended the meeting

to express her opposition to masks and social distancing. The Board granted her two minutes to speak during the time allotted for citizen comments. Anderson's comments, along with the rest of the meeting, were video recorded.

When she was called to the podium, Anderson delivered remarks that lasted over eight minutes. She gave a variety of reasons for opposing masks and social distancing. Some reasons related to her faith. Anderson is Christian, and she believes that wearing masks is inconsistent with the Christian faith. During her remarks, she expressed her view that "[s]ix-foot distance and masks are a Pagan ritual of Satanic worshipers." Compl. Ex. 1 at 2. She stated that, because her family is Christian and does not practice Satanic worship, her children are not made to "stand six feet apart from each other with facial coverings." *Id.*

Toward the end of her remarks, Anderson turned her attention to Dr. Mushar Hassan, a medical doctor and school board member whom the Board had designated as its medical liaison. Anderson gave several reasons for believing that Dr. Hassan was not the right choice to be the Board liaison, one of which was Dr. Hassan's serving as a "leader in the Islamic community." Compl. Ex. 1 at 3. Anderson noted that her children are Christians, and she said she believed that "Christian children should not be forced to wear face coverings any more than children who are Islamic or Muslim should be forced to, as [Dr. Hassan has] put it, 'be subject to the American style sexualization of children,' and have to wear less clothing than [Dr. Hassan is] comfortable with [his] children wearing." *Id.* at 3–4.[1]

_____

[1] Anderson's full comments to Dr. Hassan were as follows:

3

According to the complaint, Anderson's comments about Dr. Hassan "produced a backlash on social media, where some commenters perceived them as a personal attack on Dr. Hassan or as being Islamophobic." Compl. ¶ 54. The complaint alleges that, due to this backlash, Superintendent Hansen "became concerned over the impact of the comments and backlash on the prestigious reputation of the Elmbrook School District." *Id.* ¶ 55. The complaint alleges that, because of this concern, Hansen and others at the District took three actions. First, the Board's president and vice president signed a statement condemning Anderson's remarks about Dr. Hassan, posted the statement on the District's website, and emailed it to "a mailing list of well in excess of 7,000 people." *Id.* ¶ 61.a. The statement, which is attached to the complaint, reads:

---

[Mrs. Anderson:] Dr. Mushar, and I hope I'm saying this correctly, you are not the right choice to be the Board liaison. You do not practice in infectious disease, you have political leaning contrary to the will of this district. You online state that you're a big Obama fan and you comply mentally with his control philosophy, and you have publicly slammed our president Trump online. I'm finishing. As a leader in the Islamic community—

[Interjection by School Board President:] Heidi, we have to avoid defamatory comments.

[Mrs. Anderson:] This is not defamatory. I'm stating facts. [To Dr. Hassan:] You are a leader in the Islamic community are you not, and a leader on the Board—

[Board President:] Heidi.

[Mrs. Anderson:] O.K. Well listen, my kids are Christians. They are not subject to wearing face coverings. Christian children should not be forced to wear face coverings any more than children who are Islamic or Muslim should be forced to, as you've put it, "be subject to the American style sexualization of children," and have to wear less clothing than you're comfortable with your children wearing.

Compl. Ex. 1 at 3–4.

4

Elmbrook Schools Community,

At Tuesday night's School Board Meeting a community resident chose to use her opportunity to speak during the citizen's comment portion of the meeting to direct targeted and defamatory speech towards one of our Board Members. As leaders of the Board, we are deeply sorry for not taking stronger action to limit this resident's deplorable remarks and ask her to leave the Board room.

Our school district values and celebrates the diversity in our community. Diversity encompasses race, religion, cultures, and differences in opinion. Each of these adds to the fabric that makes our community great. However, while we emphatically support open dialogue and active listening to those with differing opinions and perspectives, we will not condone speech designed to create chasms between those in our community and as such, have removed the video segment from our recorded meeting.

The Citizen's Forum and Citizens' Comment elements of the meeting are designed to engage constituents in dialogue that helps inform the Board as it makes public policy decisions. Our community values civil discourse and understands that disagreements are inevitable. However, the behavior displayed at Tuesday's meeting was far beyond the boundaries of acceptable conduct.

We would like to publicly apologize to Dr. Mushir Hassan for what occurred during our meeting. Dr. Hassan is a valued member of our School Board and Community and he deserved an immediate response that did not come soon enough. We would also like to apologize to the community that had to endure this unseemly behavior.

We want to reassure all families that Elmbrook is a safe and welcoming district, and hate towards anyone will not be tolerated.

Compl. Ex. 2.

The second action is the District's decision to remove Anderson's comments to Dr. Hassan from the archived video of the meeting. Compl. ¶ 61.b. The complaint does not identify where the archived video of the Board meeting can be accessed. However, in her brief in support of her motion for a preliminary injunction, the plaintiff provided a link to the video on YouTube, www.youtube.com/watch?v=NOxlmby1QuI. The YouTube video

5

appears to have been posted through an account belonging to the Elmbrook School District. As reflected in the excerpt above, the District announced its intention to remove Anderson's comments about Dr. Hassan from the video in its statement to the community. Only the comments about Dr. Hassan were removed. The rest of Anderson's statement, including her views about mask requirements and social distancing, remain in the video.[2]

The third action is the letter banning Anderson from District property. *See* Compl. Ex 3. The letter is dated August 13, 2020, and it was copied to the Brookfield Police Department. The letter informed Anderson that, because her comments at the Board meeting "crossed the boundaries of acceptable and appropriate conduct by any person on District property," she would no longer be allowed on any District property without the prior approval of either the superintendent or the principal of her children's school. *Id.* Under the District's policy as stated in the letter, Anderson was forbidden from attending a Board meeting or participating in events at her children's school without obtaining prior approval.

Anderson also alleges that the District removed certain comments that she posted on "the District's Facebook post." Compl. ¶ 73. Although the complaint does not identify what the District's post was about, context suggests that the post contained either a link to, or the actual contents of, the District's written statement condemning Anderson's remarks about Dr. Hassan. Anderson alleges that she commented on the post to attempt to call attention to the District's "misleading condemnation." *Id.* ¶ 73. Anderson further

---

[2] The full text of Anderson's comments, including the part that the District removed from its video, are transcribed in Exhibit 1 to the complaint. I have reproduced the part of her comments that were removed from the video in footnote 1, *supra*.

alleges that "[c]omments in support of the District or Dr. Hassan have not been removed [from the Facebook post]." *Id.* ¶ 74.

Following these events, Anderson commenced this action on behalf of herself and her daughters under 42 U.S.C. § 1983 against Superintendent Hansen and the District. Anderson's primary claim is that imposing the ban violated the Free Speech Clause of the First Amendment because it amounted to punishment for having expressed an unpopular viewpoint during the Board meeting. Anderson also claims that the District engaged in unconstitutional "censorship" of her speech by removing her comments to Dr. Hassan from the archived video recording of the meeting and by deleting her comments about the incident from the District's Facebook post. *See* Compl. ¶¶ 70–75.

As indicated, Anderson moved for a preliminary injunction against the ban, and I granted that motion in a prior order. I reasoned that although the First Amendment allowed the District to place reasonable time, place, and manner restrictions on speakers at Board meetings and to publicly disagree with Anderson's comments, it did not allow the District to retaliate against her for having expressed an unpopular viewpoint at the Board meeting by imposing the ban.

After I issued the order granting the preliminary injunction, Superintendent Hansen wrote a letter to Anderson in which he notified her that the District was withdrawing the ban. The letter states:

> The District has reviewed the Decision and Order issued by Judge Adelman granting your motion for a preliminary injunction. The District believes its actions were reasonable and justified at the time in light of your comments, which the court acknowledged were expressions of "religiously intolerant views." The court further acknowledged that the District has the right to place reasonable time, place, and manner restrictions on speech and also has the ability to regulate its own meetings including prohibiting people from

7

speaking on matters that are not germane to the topic before the Board, exceeding time limits placed on public comment, and being belligerent. The court went on to identify alternative methods available to the District for exercising that authority.

In light of the court's guidance on the District's ability to enforce established rules and policies regarding citizens' comments and conduct at meetings, the Board is withdrawing the restrictions placed on your access to District property and facilities as outlined in Dr. Hansen's correspondence dated August 13, 2020.

ECF No. 13.

After the District issued its letter withdrawing the ban, the defendants filed a motion to dismiss the plaintiffs' complaint. The defendants first contend that Anderson's claim for a permanent injunction against the ban is moot in light of the District's letter withdrawing the ban. Next, the defendants contend that Anderson's "censorship" claim is moot because the district has posted a clip of her full comments on the video-sharing platform Vimeo, which can be reached by following this link: vimeo.com/447492029/c2b18953b2 (last viewed Feb. 12, 2021). Finally, the defendants contend that the complaint fails to state a claim for any other form of relief, such as damages for emotional distress or other harm caused while the ban was in force.

The plaintiffs filed a brief in opposition to the defendants' motion to dismiss in which they argued that all claims remain viable. Because it appeared to me that Anderson had already obtained the primary relief she sought in this suit—removal of the ban—I held a status conference during which I asked her counsel to identify what else she wanted to obtain in this suit (other than the attorneys fees' she incurred in obtaining the preliminary injunction). After counsel explained his clients' position, the parties agreed to file supplemental briefs. In those briefs, the plaintiffs contend that, although the District has

8

withdrawn the ban, Anderson's claim for a permanent injunction against it is not moot because a defendant's voluntary cessation of challenged conduct does not moot a claim. The plaintiffs further contend that Anderson's censorship claim involving the video is not moot because the District has not reinserted her comments about Dr. Hassan into the version of the video that is available on YouTube. Finally, the plaintiffs state that they intend to seek damages for the District's past conduct. However, during the status conference, plaintiffs' counsel conceded that any such damages would likely be nominal.

Below, I address the extent to which the plaintiff may proceed with her remaining claims.

## II. DISCUSSION

### A. Mootness of Claim Involving the Ban

Article III of the Constitution limits a federal court's jurisdiction to "live cases and controversies." *See, e.g., Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020). A live controversy must exist at all stages of the litigation, not merely at the time the complaint is filed. *Id.* If during the litigation events occur that prevent the court from awarding effectual relief to the plaintiff, then the case is said to be moot and must be dismissed for lack of jurisdiction. *See id.*

The defendants contend that, in light of Superintendent Hansen's letter stating that the District has withdrawn the ban, Anderson's claim for a permanent injunction against the ban is moot. Anderson contends that her claim involving the ban is not moot for two reasons: (1) she seeks damages for the harm she incurred while the ban was in force, and (2) the general rule is that a defendant's voluntary cessation of challenged conduct does not moot a claim for injunctive relief.

9

The plaintiff is correct that a claim for damages prevents mootness. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 608–09 (2001); *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 719 (7th Cir. 2011), *rev'd en banc on other grounds*, 687 F.3d 840 (7th Cir. 2012). The defendants contend that a damages claim cannot prevent mootness here because Anderson has not properly pleaded a claim for damages connected to the ban. However, the complaint requests a judgment for monetary damages to compensate Anderson for her emotional distress and any "other monetary loss or damages found proper and compensable by the court." Compl. ¶ 100.d. The defendants contend that Anderson has not sufficiently alleged that the ban caused her emotional distress or other damages. However, any failure to plead facts showing that Anderson suffered damages would not be fatal to a claim under § 1983, for damages are not an element of the claim and therefore need not be pleaded to avoid dismissal under Rule 12(b)(6). *See, e.g., Wilson v. Warren County, Ill.*, 830 F.3d 464, 468 (7th Cir. 2016) ("To succeed on their § 1983 claim, plaintiffs must prove (1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law."). In any event, even if Anderson could not recover compensatory damages, she could certainly obtain nominal damages for having been subject to the unconstitutional ban. *See Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("We long ago decided that, at a minimum, a plaintiff who proves a constitutional violation is entitled to nominal damages."). And a claim for nominal damages is sufficient to prevent mootness. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, __ U.S. __, 140 S. Ct. 1525, 1536 (2020) (Alito, J., dissenting) (collecting authorities establishing

10

that "it is widely recognized that a claim for nominal damages precludes mootness"). For these reasons, Anderson's § 1983 claim involving the ban is not moot.

Because Anderson's claim for damages preserves a live controversy with respect to the ban, I do not have to separately consider whether the defendants' voluntary withdrawal of the ban renders the request for injunctive relief moot. The damages claim preserves the court's power to hear the First Amendment challenge to the ban, and, if Anderson prevails, I can then address whether a permanent injunction is an appropriate remedy. When determining whether a permanent injunction is appropriate, I will apply the ordinary equitable factors that govern requests for injunctive relief. *See, e.g., Lacy v. Cook County, Ill.*, 897 F.3d 847, 867 (7th Cir. 2018). In this regard, I note that I am highly unlikely to enter a permanent injunction against a practice that is not ongoing and that the defendants are not likely to resume, for in that case an injunction will not be needed to prevent irreparable harm.

In short, the defendants' motion to dismiss the plaintiff's First Amendment challenge to the ban will be denied.

**B.    "Censorship" Claim**

The next question is whether Anderson may proceed with her claim involving the District's alleged "censorship" of her expression. *See* Compl. ¶¶ 70–75. The complaint identifies two acts that Anderson believes amount to censorship in violation of the First Amendment: (1) the removal of her comments to Dr. Hassan from the archived video recording of the Board meeting, and (2) the deletion of her comments from the District's Facebook post. I consider each act separately.

11

### 1. Removal of comments from archived video

The defendants contend that this claim is moot because they have made a recording of her full remarks available on Vimeo. However, the plaintiff complains about the removal of her comments from the version of the video that the District posted on YouTube using its official account. This is the version that is most easily viewed by the public, as evidenced by the fact that the YouTube video has been viewed approximately 26,000 times while the Vimeo clip has been viewed fewer than 40 times. The plaintiff wishes to have her full remarks restored to the official YouTube video of the meeting, and her claim for an injunction to achieve this result has not been mooted by the defendants' posting her comments as a separate clip on Vimeo.

Because the claim involving the video is not moot, I turn to its merits, which I consider in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Here, the basic facts of the claim are adequately pleaded, and the question is whether the defendants could have violated the First Amendment by removing a part of Anderson's comments from the video.

In her original brief in response to the motion to dismiss, Anderson did not develop a legal argument supporting her claim that the removal of her comments violated the First Amendment. I noted this deficiency at the status conference I held on the defendants' motion and then gave her an opportunity to file supplemental briefs, which she has done. In her supplemental briefs, Anderson claims that the removal of her comments violates the Free Speech Clause because it amounted to the removal of her viewpoint from a limited public forum. *See* Reply Br. at 6, ECF No. 22.

Anderson's legal theory relies on the Supreme Court's "forum" jurisprudence, which holds that the government may not engage in viewpoint discrimination when regulating private expression on certain forms of government property. *See, e.g., Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44–46, 49 (1983). The Court's forum jurisprudence applies not only to physical forums, but also to "metaphysical" forums for speech, such as a forum created when the government allocates funding for private expression. *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830 (1995). Under these cases, the District cannot exclude speakers from the public-comment portion of its Board meetings simply because they intend to express viewpoints with which the District disagrees. *See Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011) (recognizing that "audience time" during a city council meeting constitutes a designated public forum).

In the present case, the defendants did not prevent Anderson from delivering her allegedly inappropriate remarks to Dr. Hassan during the meeting. Thus, she cannot claim to have been excluded from the designated public forum that the District created when it opened the meeting to public comments. Anderson instead contends that the District excluded her from a designated public forum when it removed her comments about Dr. Hassan from the archived video recording of the meeting. But Anderson has not cited, and I have not found, a case suggesting that an archived video recording of a meeting constitutes a forum of any sort. Moreover, the purposes of the Supreme Court's forum jurisprudence would not be served by treating an archived recording of a meeting as a forum, even if the meeting was itself a forum. That is so because such a recording does not afford opportunities for private speech; it merely serves as a record of the speech that occurred during the actual forum.

An archived video is analogous to the library resources at issue in *United States v. American Library Association, Inc.*, 539 U.S. 194 (2003), which the Court held were not parts of a public forum. In that case, the Court recognized that the purpose of a library's providing internet access and other library resources to the public was not to create a forum for web publishers and authors to express themselves, but to "facilitate [patrons'] research, learning, and recreational pursuits." *Id.* at 206. Similarly, the District's purpose in uploading video recordings of its Board meetings to YouTube is not to create a forum in which concerned citizens can express their views about District business, but to facilitate the public's access to information about what had occurred at the meetings.[3]

Because the video recording is not itself a forum for private speech, the District's decision to edit Anderson's comments to Dr. Hassan out of the video cannot be treated as an act of viewpoint discrimination in a designated public forum. For this reason alone, Anderson's claim that the District violated the First Amendment by editing the video must be dismissed. However, there is a second, related reason for dismissing the claim, which is that the District's editing the recording before publishing it was a form of government speech.

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). A government entity is free to speak for itself, to say what it wishes, and to

---

[3] One might contend that the District's removing citizen comments from the archived video makes it less valuable as a source of information about what occurred at the meeting. Even if that were true, however, it would not follow that the video is itself a forum. Although a citizen might claim that the District's censorship violated open-records laws or otherwise interfered with his or her right to obtain information about the meeting, such a claim would not be actionable under the Free Speech Clause of the First Amendment.

14

select the views that it wants to express. *Id.* at 467–68. This freedom "in part reflects the fact that it is the democratic electoral process that first and foremost provides a check on government speech." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015).

In the present case, the District created the video and posted it on the internet using its own YouTube account. Had a private person taken these steps, no one would dispute that they were the person's own expressive acts. The result should be no different when the person making the video and posting it on the internet is the government. Anderson contends that her speech did not "become government speech merely because it was made and recorded in a government forum." Reply Br. at 6. But while it is true that Anderson's speech was not government speech, the *recording* of her speech is different. When a third person records a person's speech and creates an internet post about it, both the recording and the internet post are the third person's expression. Importantly, the District did not regulate Anderson's speech at the forum or prevent her from repeating her message outside the forum; it instead declined to *reproduce* her speech in the video that it posted on YouTube using its own account. The District's editing her comments and posting the video were acts of government speech.

One might contend that creating an archive of recordings on the internet is not a form of expression at all, and that therefore the District was not engaging in expression when it added the video of the August meeting to its archive. But even if that were correct, there could be no doubt that, in this case, the District's *removing* Anderson's comments from the video was an expressive act. As I discussed in the background section, after the Board meeting was over, the District published a response to Anderson's comments in

15

which it deemed her remarks to Dr. Hassan "deplorable." Compl. Ex. 2. Clearly, the act of publishing this response was a form of government speech. And in the response, the District stated that because it did not "condone" Anderson's remarks, it had "removed the video segment from our recorded meeting." *Id.* This shows that the act of removing the comments from the video was a form of government speech—it was intended to express to the public that the District deemed the remarks unacceptable. That this was the District's own expression can be confirmed by considering a hypothetical involving the opposite of what happened here. In this hypothetical, the District approves of Anderson's comments and wants to highlight them on its own website. If the District published a statement indicating that it found the comments insightful and placed a clip of them on the front page of its website, no one could dispute that the District had expressed its own message. For the same reason, the District's stating that it found the comments deplorable and removing the comments from its YouTube account must be treated as acts of government speech.

In her brief, Anderson relies heavily on a passage from the Supreme Court's decision in *Matal v. Tam*, __ U.S. __, 137 S. Ct. 1744 (2017), a case in which the Court rejected the argument that trademark registration was a form of government speech. The passage states that

> while the government-speech doctrine is important—indeed, essential—it is a doctrine that is susceptible to dangerous misuse. If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints. For this reason, we must exercise great caution before extending our government-speech precedents.

*Id.* at 1758. This passage does not help Anderson. It simply underscores the point that the message conveyed by a private trademark does not become the government's

16

message when the government allows the trademark to be registered. In the present case, however, the District engaged in acts that are fundamentally different than trademark registration. The District responded to Anderson's speech by delivering its own message and refusing to publish her speech on its own web resources. This was government speech, even though trademark registration is not. Accordingly, the plaintiffs' claim that the District's editing the video violated the First Amendment will be dismissed.

### 2. Removal of comments from Facebook post

The complaint alleges that Anderson's comments to Dr. Hassan "produced a backlash on internet social media, where some commenters perceived them as a personal attack on Dr. Hassan or as being Islamophobic." Compl. ¶ 54. This backlash apparently occurred, in part, on the District's Facebook post about the meeting. *See id.* ¶¶ 73–75. Anderson decided to defend herself from the accusations made against her by posting her own comments on the District's Facebook post. The District then deleted her comments. *Id.* ¶ 73. The District did not delete the comments made by other members of the public, which supported the District and Dr. Hassan. *Id.* ¶ 74. Anderson alleges that deleting her comments from the post was an act of viewpoint discrimination.

I conclude that, unlike the District's decision to remove Anderson's remarks from the recording of the meeting, its decision to remove her comments from the Facebook post was an unlawful form of regulation within a designated public forum. As I discussed above, the video recording was not itself a forum of any sort because it did not create a space (real or metaphysical) for private expression. But the Facebook post is different because the District allowed members of the public to write their own comments underneath the post and to carry on discussions with one another. Although the District

was not required to create this forum for public discussion, once it did so, it could not exclude speakers on the basis of viewpoint. *See, e.g., Minn. Voters Alliance v. Mansky*, __ U.S. __, 138 S. Ct. 1876, 1885 (2018). Recently, this principle has been recognized in cases holding that a government official who uses their social media account for government business cannot block comments from those who express views with which the official disagrees. *See Knight First Amendment Institute at Columbia University v. Trump*, 928 F.3d 226, 238 (2d Cir. 2019) ("While [President Trump] is certainly not required to listen, once he opens up the interactive features of his account to the public at large he is not entitled to censor selected users because they express views with which he disagrees."); *Davison v. Randall*, 912 F.3d 666, 681–88 (4th Cir. 2019) (holding that interactive component of Facebook page maintained by chair of county board of supervisors was public forum from which members of the public could not be excluded based on viewpoint); *One Wisconsin Now v. Kremer*, 354 F.Supp.3d 940, 953–55 (E.D. Wis. 2019) (holding that interactive portions of state legislators' Twitter accounts were designated public forums and that legislators could not block users based on their viewpoints).

Further, unlike the District's removing Anderson's comments from its own video of the Board meeting, its deletion of Anderson's comments from the Facebook post was not government speech. To be sure, the District's own posts to its Facebook page are government speech. *See Knight First Amendment Inst.*, 928 F.3d at 239; *Davison*, 912 F.3d at 686; *One Wisconsin Now*, 354 F. Supp. 3d at 954. Thus, if the District posted a clip of Anderson's remarks on its Facebook page with the caption "These remarks are deplorable!", it would have engaged in government speech. But by allowing members of

18

the public to leave their own comments, the District created a forum for public discussion. The public discussion that occurred in the forum was the speech of the participants, not the District's speech. *See Knight First Amendment Inst.*, 928 F.3d at 239–40; *Davison*, 912 F.3d at 686; *One Wisconsin Now*, 354 F. Supp. 3d at 954–55. Although one might contend that the District's act of removing Anderson's speech was its own expressive act, just like its deleting her comments from the archived video was its own expressive act, the difference is that the video was not a public forum. The government is simply not permitted to engage in viewpoint discrimination when granting or denying access to a public forum. *See Page v. Lexington County School Dist. One*, 531 F.3d 275, 283 (4th Cir. 2008) (explaining that while government-speech doctrine protects school district's right to select hyperlinks to include on its own website, government could not engage in viewpoint discrimination if it turned its website into a limited public forum). Perhaps if the District carefully controlled the comments on its Facebook page, then the District could claim that its deletion of Anderson's comments was an act of government speech. For then the comment area of the page would not have been a public forum, and the deletion could be viewed as the District's trying to preserve the message it was trying to convey when it created the post. *Cf. Davison*, 912 F.3d at 687 (implying that if chair had "effectively controlled" or "curated" the comments area of her Facebook page, it would not have become a public form). However, based on the facts alleged in the complaint, it appears that the District allowed anyone to post whatever comments they wished to post on its Facebook page. The District did not delete comments made by anyone other than Anderson. Accordingly, its deletion of her comments was the regulation of a designated public forum, not government speech.

19

For these reasons, the plaintiff's claim that the District violated the First Amendment by deleting her comments on the Facebook post will not be dismissed.

### III. CONCLUSION

In sum, Anderson's challenge to the ban is not moot because she still has a claim for damages. Although her claim involving the removal of a portion of her comments from the archived video is not moot, that claim fails on the merits and will be dismissed. Finally, Anderson's claim that the deletion of her comments from the District's Facebook post violated the First Amendment will not be dismissed.

Before concluding, I must note that, while the suit is not technically moot, there appears to be very little left at stake. The District has withdrawn the ban, and because there is no realistic danger of the District's reimposing the ban, further injunctive relief is unnecessary. Although Anderson desires a broader injunction barring the District from "continuing to engage in any improper censorship, defamation, prior restraints, punishment for speech, or any other acts of viewpoint discrimination," Compl ¶ 100.b, I could not issue such an overbroad and vague injunction. *See* Fed. R. Civ. P. 65(d); *Schmidt v. Lessard*, 414 U.S. 473, 475–76 (1974); *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) (noting that injunctions that merely instruct the enjoined party to obey the law are generally overbroad). The District does not appear to still be blocking Anderson from commenting on its Facebook posts, and thus there is no need for an injunction to reinstate her access. Although Anderson is in theory entitled to damages for having been subject to the District's allegedly unconstitutional conduct, her damages are likely to be no more than nominal. For these reasons, I encourage the parties to confer with each other about bringing this case to an end before they expend

20

further resources on litigation. In this regard, I advise the plaintiff that, although she may be entitled to recover the attorneys' fees she has already incurred in obtaining the preliminary injunction, she almost certainly will not be entitled to recover the fees she incurs during the rest of this litigation if it produces no more than an award of nominal damages. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (noting that when plaintiff recovers only nominal damages, "the only reasonable fee is usually no fee at all").

For the reasons stated, **IT IS ORDERED** that the defendants' motion to dismiss (ECF No. 11) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to the plaintiffs' claim involving the archived video but denied in all other respects.

Dated at Milwaukee, Wisconsin, this 12th day of February, 2021.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge

21