# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HEIDI ANDERSON, et al.,
    Plaintiffs,

  v.                                      Case No. 20-C-1305

DR. MARK HANSEN, et al.,
    Defendants.

## DECISION AND ORDER

Heidi Anderson commenced this action under 42 U.S.C. § 1983 after the Elmbrook School District banned her from District property in response to comments she made at a school board meeting. In a prior order, I concluded that the ban violated Anderson's First Amendment right to free speech and preliminarily enjoined it. The District later voluntarily withdrew the ban. Although the dispute over the ban thus appears to be moot, Anderson continues to press a claim for damages she suffered while the ban was in force, as well as a claim for damages caused by the District's deletion of her comments from a post on its Facebook page. Before me now are two motions: (1) the defendants' motion for summary judgment on Anderson's remaining claims based on her failure to respond to requests for admission under Federal Rule of Civil Procedure 36; and (2) Anderson's motion to withdraw or amend her admissions. Also in this order, I dismiss Anderson's children as parties because the complaint asserts no viable claim on their behalf.

## I. BACKGROUND

Anderson is the mother of two children who attended schools within the Elmbrook School District.[1] On August 11, 2020, the Elmbrook Board of Education held a public meeting to discuss precautions for dealing with the COVID-19 pandemic, including requiring children to wear masks and to social distance. Anderson attended the meeting to express her opposition to masks and social distancing. The Board granted her two minutes to speak during the time allotted for citizen comments. Anderson's comments, along with the rest of the meeting, were video recorded.

When she was called to the podium, Anderson delivered remarks that lasted over eight minutes. She gave a variety of reasons for opposing masks and social distancing. Some reasons related to her faith. Anderson is Christian, and she believes that wearing masks is inconsistent with Christianity. During her remarks, she expressed her view that "[s]ix-foot distance and masks are a Pagan ritual of Satanic worshipers." Compl. Ex. 1 at 2. She stated that, because her family is Christian and does not practice Satanic worship, her children are not made to "stand six feet apart from each other with facial coverings." *Id.*

Toward the end of her remarks, Anderson turned her attention to Dr. Mushar Hassan, a medical doctor and school board member whom the Board had designated as its medical liaison. Anderson gave several reasons for believing that Dr. Hassan was not the right choice to be the Board liaison, one of which was Dr. Hassan's serving as a

---

[1] Anderson's children attended Elmbrook schools during the 2020 academic year and earlier. However, Anderson's eldest daughter has since graduated from high school, and her younger daughter now attends private school.

"leader in the Islamic community." Compl. Ex. 1 at 3. Anderson noted that her children are Christians, and she said she believed that "Christian children should not be forced to wear face coverings any more than children who are Islamic or Muslim should be forced to, as [Dr. Hassan has] put it, 'be subject to the American style sexualization of children,' and have to wear less clothing than [Dr. Hassan is] comfortable with [his] children wearing." *Id.* at 3–4.

According to the complaint, Anderson's comments about Dr. Hassan "produced a backlash on social media, where some commenters perceived them as a personal attack on Dr. Hassan or as being Islamophobic." Compl. ¶ 54. The complaint alleges that, due to this backlash, Superintendent Hansen "became concerned over the impact of the comments and backlash on the prestigious reputation of the Elmbrook School District." *Id.* ¶ 55. The complaint alleges that, because of this concern, Hansen and others at the District took three actions. First, the Board's president and vice president signed a statement condemning Anderson's remarks about Dr. Hassan, posted the statement on the District's website, and emailed it to "a mailing list of well in excess of 7,000 people." *Id.* ¶ 61.a. The statement, which is attached to the complaint, reads:

Elmbrook Schools Community,

At Tuesday night's School Board Meeting a community resident chose to use her opportunity to speak during the citizen's comment portion of the meeting to direct targeted and defamatory speech towards one of our Board Members. As leaders of the Board, we are deeply sorry for not taking stronger action to limit this resident's deplorable remarks and ask her to leave the Board room.

Our school district values and celebrates the diversity in our community. Diversity encompasses race, religion, cultures, and differences in opinion. Each of these adds to the fabric that makes our community great. However, while we emphatically support open dialogue and active listening to those

3

> with differing opinions and perspectives, we will not condone speech designed to create chasms between those in our community and as such, have removed the video segment from our recorded meeting.
>
> The Citizen's Forum and Citizens' Comment elements of the meeting are designed to engage constituents in dialogue that helps inform the Board as it makes public policy decisions. Our community values civil discourse and understands that disagreements are inevitable. However, the behavior displayed at Tuesday's meeting was far beyond the boundaries of acceptable conduct.
>
> We would like to publicly apologize to Dr. Mushir Hassan for what occurred during our meeting. Dr. Hassan is a valued member of our School Board and Community and he deserved an immediate response that did not come soon enough. We would also like to apologize to the community that had to endure this unseemly behavior.
>
> We want to reassure all families that Elmbrook is a safe and welcoming district, and hate towards anyone will not be tolerated.

Compl. Ex. 2.

Second, the District removed Anderson's remarks to Dr. Hassan from the archived video recording of the meeting, which the District makes available to the public through the internet.[2] Third, the District sent Anderson a letter informing her that, because her comments at the Board meeting "crossed the boundaries of acceptable and appropriate conduct by any person on District property," she would no longer be allowed on District property without the prior approval of either the superintendent or the principal of her children's school. *Id.* Under the District's policy as stated in the letter, Anderson was forbidden from attending Board meetings or participating in events at her children's school without prior approval.

---

[2] The District removed only Anderson's comments about Dr. Hassan from the video. The rest of Anderson's statement, including her views about mask requirements and social distancing, remain in the video.

4

Anderson also alleges that the District removed certain comments that she posted on "the District's Facebook post." Compl. ¶ 73. Although Anderson has not explained in detail what the District's post was about, context suggests that the post contained either a link to, or the actual contents of, the District's written statement condemning Anderson's remarks about Dr. Hassan. Anderson alleges that she commented on the post to attempt to call attention to the District's "misleading condemnation." *Id.* ¶ 73. Anderson further alleges that "[c]omments in support of the District or Dr. Hassan have not been removed [from the Facebook post]." *Id.* ¶ 74.

Following these events, Anderson commenced this action on behalf of herself and her daughters under 42 U.S.C. § 1983 against Superintendent Hansen in his official capacity and the District. Anderson's primary claim is that imposing the ban violated the Free Speech Clause of the First Amendment because it amounted to punishment for having expressed an unpopular viewpoint during the Board meeting. Anderson also claims that the District engaged in unconstitutional "censorship" of her speech by removing her comments to Dr. Hassan from the archived video recording of the meeting and by deleting her comments about the incident from the District's Facebook post. *See* Compl. ¶¶ 70–75.

Anderson moved for a preliminary injunction against the ban, and I granted that motion in a prior order. *See Anderson v. Hansen*, 489 F. Supp. 3d 836 (E.D. Wis. 2020). I reasoned that, although the First Amendment allowed the District to place reasonable time, place, and manner restrictions on speakers at Board meetings and to publicly disagree with Anderson's comments, it did not allow the District to retaliate against her for having expressed an unpopular viewpoint at the Board meeting by imposing the ban.

5

After I granted the preliminary injunction, Superintendent Hansen sent Anderson a letter in which he informed her that the District was withdrawing the ban. The defendants then filed a motion to dismiss Anderson's complaint on the grounds that her claim involving the ban was moot and her other claims failed on the merits. In a prior order, I granted the defendants' motion in part and denied it in part. *See Anderson v. Hansen*, 519 F. Supp. 3d 457 (E.D. Wis. 2021). In that order, I found that Anderson's claim involving the ban was not moot because it included a request for damages to compensate her for injuries she suffered while the ban was in force. *Id.* at 463–64. I also concluded that Anderson stated a claim under the First Amendment based on the District's having deleted her comments from the Facebook post relating to the meeting. With respect to this claim, I concluded that the complaint alleged facts showing that the comment area of the Facebook post was a designated public forum and that the District had engaged in viewpoint discrimination by deleting Anderson's comments but not the comments supporting Dr. Hassan. *Id.* at 467–69. However, I dismissed Anderson's claim involving the District's decision to remove her comments to Dr. Hassan from the archived video recording of the school board meeting. With respect to this claim, I concluded that the video was not itself a public forum and that the District's removing Anderson's comments from the video was an act of government speech to which the First Amendment did not apply. *Id.* at 464–67.

Having resolved the motion to dismiss and received the defendants' answer to the complaint, I issued a scheduling order setting a discovery and dispositive-motion deadline of September 10, 2021. ECF No. 26 ¶ 2. Prior to this deadline, the defendants filed a motion for summary judgment on the merits of Anderson's remaining claims. The motion

is based on Anderson's failure to respond within 30 days to requests for admission that the defendants served on her under Federal Rule of Civil Procedure 36. By operation of that rule, Anderson's failure to respond resulted in her admitting the matters addressed in the requests. *See* Fed. R. Civ. P. 36(a)(3). The defendants contend that, in light of the admissions, Anderson cannot prove that the defendants' allegedly unconstitutional conduct resulted in compensable harm.

In response to the defendants' motion, Anderson filed a motion to withdraw or amend her admissions under Federal Rule of Civil procedure 36(b). In this motion, Anderson states that her failure to respond within 30 days was due to her counsel's calendaring error. Anderson notes that her responses were due by July 7, 2021, and that counsel served completed responses on the defendants on July 26, 2021, making her responses 19 days late. Anderson has filed a copy of her proposed responses to the requests for admission with the court, and she contends that those responses show that significant factual disputes remain in this case, and that therefore the defendants' motion for summary judgment should be denied.

I consider both the defendants' motion for summary judgment and the plaintiff's motion to withdraw or amend her admissions below. I also take this opportunity to dismiss Anderson's two children from this litigation on the ground that no claims have been, or could be, asserted on their behalf.

## II. DISCUSSION

### A. Legal Standards

Two rules of civil procedure are relevant to the present motions. The first is Federal Rule of Civil Procedure 56, which governs motions for summary judgment. Under that

7

rule, summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

The second applicable rule is Federal Rule of Civil Procedure 36, which governs requests for admission. Under Rule 36(a)(1), a party generally may serve on any other party a written request to admit the truth of any matters relating to "facts, the application of law to fact, or opinions about either" or "the genuineness of any described documents." Under Rule 36(a)(3), "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Under Rule 36(b), "[a] matter admitted . . . is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." The rule states that the court "may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

Federal courts confronted with motions to withdraw or amend admissions have noted that "[t]he two-prong test of Rule 36(b) directs the court to consider the 'effect upon the litigation and prejudice to the resisting party[,]' rather than focusing on the moving party's excuses for an erroneous admission." *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (quouting *Mid Valley Bank v. N. Valley Bank*, 764 F. Supp. 1377, 1391 (E.D. Cal. 1991)). Thus, although Anderson has offered an excuse for her allegedly erroneous

8

admissions—her counsel's calendaring error—I give this excuse no weight. Instead, I ask whether (1) permitting withdrawal or amendment of the admissions would promote the presentation of the merits, and (2) whether permitting such withdrawal or amendment would prejudice the defendants in defending the case on the merits.

In considering whether permitting withdrawal or amendment of admissions would promote the presentation of the merits, I ask whether "the admissions are contrary to the record of the case, and whether the effect of upholding the admissions would be to practically eliminate any presentation of the merits." *Centrifugal Acquisition Corp., Inc. v. Moon*, 267 F.R.D. 240, 241 (E.D. Wis. 2010); *see also Prusia*, 18 F.3d at 641 (asking whether "the record demonstrates that the 'admitted' facts are contrary to the actual facts"). As part of this inquiry, I look to see whether there is any "affidavit, verified pleading, or other evidence at bar to suggest the admission, if left standing, would render an unjust result under the law." *Branch Banking & Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 659 (D. Del. 1988).

**B.    Analysis**

In their motion for summary judgment, the defendants contend that Anderson's admissions show that their conduct caused her no damages, and that therefore they are entitled to summary judgment on all claims. Initially, however, I must point out that, even if Anderson suffered no compensable harm, the defendants would not be entitled to summary judgment on any claim. That is so because, even if Anderson could not prove any financial or other harm that would support an award of compensatory damages, she would still be entitled to nominal damages if she proved that the defendants' conduct deprived her of a constitutional right. *See Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir.

9

2003) ("We long ago decided that, at a minimum, a plaintiff who proves a constitutional violation is entitled to nominal damages."). Unlike compensatory damages, nominal damages are not awarded to compensate the plaintiff for economic or other harm; rather, they are awarded as "recognition of a violation of rights." *Id.* (quoting *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir.1983)). None of the requests for admission—which concern compensatory damages only—preclude Anderson from recovering nominal damages. Thus, if the plaintiff prevails on either of her remaining constitutional claims, she will at least be entitled to a nominal damages award of one dollar. *See Carey v. Piphus*, 435 U.S. 247, 267 (1978) (noting that nominal damages in § 1983 suit may not exceed one dollar). To the extent the defendants' motion for summary judgment pertains to nominal damages, it will be denied.

However, I will construe the defendants' motion as being one for partial summary judgment on the issue of whether the plaintiff is entitled to compensatory damages. Anderson claims two forms of such damages: (1) the mental and emotional harm she suffered as a result of the defendants' alleged constitutional violations, and (2) the financial harm she claims to have incurred because the defendants' conduct interfered with her employment prospects.

The defendants did not serve requests for admission on Anderson that clearly relate to mental or emotional harm. However, to the extent that any of the defendants' requests could be construed as seeking an admission that the plaintiff did not suffer such harm, I would permit the plaintiff to withdraw the admission. First, an admission that the defendants' conduct did not result in mental or emotional harm would be contrary to the record. In particular, the record shows that, while the ban was in force, Anderson was

10

unable to attend her eldest daughter's senior-year activities and dance performances, which occurred on school property, without first receiving permission from District officials. *See* Anderson Resp. to Request for Admission ("RFA") No. 47. Anderson describes her exclusion from these activities as "painful." *Id.* This form of emotional harm is compensable under § 1983. *See, e.g., Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018) (damages under § 1983 may include compensation for "intangible emotional harm"). Thus, allowing Anderson to withdraw an admission that she did not suffer emotional harm would promote the presentation of the merits. Further, allowing the withdrawal would not prejudice the defendants' ability to defend on the merits. As noted, the defendants did not even serve an admission that clearly relates to mental and emotional harm, possibly because examples of such harm—including Anderson's preclusion from her daughter's dance events—were described in Anderson's affidavit in support of her motion for preliminary injunction. *See* Anderson Decl. ¶ 22. Thus, it is hard to see any way in which the defendants would be prejudiced by having to continue defending against Anderson's request for damages for mental or emotional harm. Further, because a genuine factual dispute remains on this issue, the defendants are not entitled to summary judgment with respect to the request for damages for mental or emotional harm.

The situation concerning financial harm is different. By operation of Rule 36(a), Anderson has admitted that she did not suffer any financial or economic harm because of either the ban or the deletion of her comments from the Facebook post. *See* RFA Nos. 39–44, 50. Specifically, Anderson has admitted that she was unemployed at the time the ban was in force (RFA No.34), that she was not seeking employment while the ban was in force (*id.* No. 36), that the District's actions did not harm her ability to find employment

11

(*id.* No. 40), that she suffered "no negative financial consequences" from the ban (*id.* No. 43), that she was not prohibited from seeking employment or income due to the ban (*id.* No. 44), and that she "faced no negative financial consequence" because of her comments on the District's Facebook post (*id.* No. 50). Thus, unless I permit Anderson to withdraw or amend these admissions, the defendants would be entitled to summary judgment on the issue of whether the allegedly unconstitutional conduct caused financial harm.

I will not permit Anderson to withdraw or amend these admissions because she has not shown that withdrawal or amendment would promote the presentation of the merits. As I explain below, Anderson's admissions are not contrary to the record in this case, in that she has not provided an affidavit or other evidence suggesting that these admissions, if left standing, would render an unjust result under the law. *See Branch Banking & Trust Co.*, 120 F.R.D. at 659.

Anderson does not dispute that she was unemployed during the time the ban was in force. But in her proposed amended responses to the requests for admission, Anderson claims that the defendants' conduct interfered with her ability to obtain employment. With respect to the ban, however, Anderson does not dispute that she was not seeking employment during a large percentage of the time the ban was in force because she was recovering from sinus surgery. *See* Resp. to RFA No. 36. The ban was imposed on August 13, 2020, I enjoined it on September 25, 2020, and the District formally withdrew it on October 12, 2020. In her proposed amended admission, Anderson states that she was recovering from sinus surgery "[d]uring part of August and September" and that she had intended to "go back into full time employment after this." Resp. to RFA No. 36.

12

Anderson does not identify any specific employment opportunity that arose between August 13 and October 12 that she applied for or declined to pursue because the ban was in force. Anderson, who has training in human resources, vaguely notes that the District itself solicited applications for "HR related positions," but she does not provide evidence that the District solicited applications for these positions during the time when the ban was in force. *See* Resp. to RFA No. 44. Further, Anderson does not claim that she would have applied for these positions but for the ban. Instead, she states that, due to low pay, there were "very few positions" at the District that she would have been interested in applying for. *Id.*

In her proposed amended response to one request for admission, Anderson does note that, because of the ban, she had to withdraw from volunteer work she had been performing at the District. Resp. to RFA No. 44. Anderson claims that having to withdraw from the volunteer opportunity interfered with her ability to "network with other HR professionals" and deprived her of an item to include on her resume. *Id.* However, Anderson does not identify any concrete financial harm that flowed from being unable to network or to include the volunteer experience on her resume, such as a lost employment or business opportunity.

In another proposed amended response, Anderson claims that the ban caused her financial harm because her children elected to learn virtually from home while the ban was in force. Resp. to RFA No. 43. Anderson contends that having her children at home all day prevented her from performing job-seeking tasks such as interviewing by phone. Again, however, Anderson points to no specific employment opportunity she would have

13

pursued or obtained if her children were not learning virtually, so this potential area of damages is entirely speculative.

More generally, Anderson claims that her employment prospects were harmed because the District's conduct damaged her reputation. But there are several problems with this line of argument. First, Anderson does not claim that the District's imposing the ban harmed her reputation; instead, she claims that the District's "publicly defam[ing]" her as a "racist" to "thousands of people in her community" harmed her reputation. Resp. to RFA No. 36. This is an apparent reference to the District's letter to the community, in which it stated, without identifying Anderson by name, that it disapproved of her comments about Dr. Hassan.[3] But the District's publishing this letter did not deprive Anderson of her First Amendment rights, as it was a form of government speech made in response to the plaintiff's own speech. *See Anderson*, 519 F. Supp. 3d at 467. Further, although Anderson describes the letter as defamatory, she has not brought a claim for defamation against the defendants. Although she "reserved" a state-law claim for defamation in her complaint, *see* Compl. at page 21, she never sought leave to amend her complaint to assert it, and it is now too late to do so because discovery has closed. Thus, any damages that flowed from the District's own speech about Anderson's conduct at the school board meeting are not recoverable in this suit.

In any event, even if Anderson could recover damages under § 1983 based on the District's speech, she has submitted no proof that the District's statements about her conduct at the meeting deprived her of an employment opportunity or otherwise caused

---

[3] To avoid confusion, I note that the District never described Anderson as a racist in its letter or in any other communication of which I am aware.

financial harm. As far as the record reveals, no potential employer or business prospect refused to associate with Anderson because of the District's statements about her. Indeed, Anderson identifies no potential employer or business associate who expressed any concern whatsoever about either her conduct at the school board meeting or the District's description of her conduct.

Finally, Anderson identifies no financial harm attributable to the District's deleting her comments from its Facebook post. Anderson's theory of damages relating to these deletions seems to be that the District exacerbated the harm to her reputation by preventing her from posting comments in which she responded to the District's comments about her conduct at the meeting. *See* Resp. to RFA No. 50. But because Anderson submits no evidence showing that she suffered financial harm as a result of the District's comments in the first place, it follows that she has no evidence that the District's deletion of her comments led to additional financial harm.[4]

In sum, the plaintiff has not shown that her admission that she suffered no financial harm from either the ban or the deletion of her Facebook comments is contrary to the record. For this reason, I conclude that withdrawal or amendment of the relevant admissions would not promote the merits of the action. Based on the admissions, the defendants are entitled to summary judgment on the plaintiff's request for damages for financial or economic harm. However, the defendants are not entitled to summary

---

[4] Perhaps Anderson would claim that the District's deletion of her comments prevented her from responding to comments made by other members of the public, in which those members of the public accused her of being a racist. *See* RFA No. 56 (asking plaintiff to admit the existence of social media posts calling the plaintiff a racist). But Anderson has not submitted evidence that the posts from members of the public caused her any financial harm that she could have prevented by defending herself on Facebook.

judgment on the plaintiff's request for compensatory damages based on mental or emotional harm. Moreover, the plaintiff is not precluded from recovering nominal damages if she proves that the defendants committed the alleged constitutional violations.

**C.     Dismissal of Children as Plaintiffs**

Finally, I note that several of the requests for admission served on Anderson pertain to harm allegedly suffered by her children, who are named in the complaint as plaintiffs. *See, e.g.,* RFA No. 47. However, the complaint does not explicitly assert any claim for relief on behalf of the children. Moreover, the complaint does not allege that the District violated the children's rights under the First Amendment or any other constitutional provision. And the children could not bring a claim under § 1983 to recover damages that they may have suffered because of the District's unconstitutional conduct towards their mother. *See Ray v. Maher*, 662 F.3d 770, 773–74 (7th Cir. 2011)("§ 1983 claims are personal to the injured party"); *Estate of Johnson by Castle v. Vill. of Libertyville*, 819 F.2d 174, 178 (7th Cir. 1987) ("Plaintiffs must assert their own legal rights and interests."); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) ("[A] section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."). For these reasons, the children are not proper parties to this case, and they will be dismissed.

**D.     Further Proceedings**

In my decision on the motion to dismiss, I noted that, while I could not dismiss this case, there appeared to be very little left at stake, and I encouraged the parties to bring this case to an end before they expended additional resources on litigation. It has been

16

Case 2:20-cv-01305-LA   Filed 02/02/22   Page 16 of 18   Document 42

judgment on the plaintiff's request for compensatory damages based on mental or emotional harm. Moreover, the plaintiff is not precluded from recovering nominal damages if she proves that the defendants committed the alleged constitutional violations.

**C.     Dismissal of Children as Plaintiffs**

Finally, I note that several of the requests for admission served on Anderson pertain to harm allegedly suffered by her children, who are named in the complaint as plaintiffs. *See, e.g.,* RFA No. 47. However, the complaint does not explicitly assert any claim for relief on behalf of the children. Moreover, the complaint does not allege that the District violated the children's rights under the First Amendment or any other constitutional provision. And the children could not bring a claim under § 1983 to recover damages that they may have suffered because of the District's unconstitutional conduct towards their mother. *See Ray v. Maher*, 662 F.3d 770, 773–74 (7th Cir. 2011)("§ 1983 claims are personal to the injured party"); *Estate of Johnson by Castle v. Vill. of Libertyville*, 819 F.2d 174, 178 (7th Cir. 1987) ("Plaintiffs must assert their own legal rights and interests."); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) ("[A] section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."). For these reasons, the children are not proper parties to this case, and they will be dismissed.

**D.     Further Proceedings**

In my decision on the motion to dismiss, I noted that, while I could not dismiss this case, there appeared to be very little left at stake, and I encouraged the parties to bring this case to an end before they expended additional resources on litigation. It has been

nearly a year since I offered that advice, and yet this case lumbers on. It is time to bring it to an end. For this reason, I will schedule a pretrial conference for the purpose of setting the plaintiff's remaining claims for trial. The trial will be limited to the issues of whether the defendants violated Anderson's free-speech rights by issuing the ban and deleting her Facebook comments, and the amount of compensation to which she is entitled for any emotional distress she suffered because of these events.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that summary judgment is entered in favor of the defendants on the plaintiff's request for compensatory damages for financial or economic harm. The motion is denied to the extent that summary judgment is not entered on the plaintiff's request for mental or emotional harm, or on the merits of her claims involving the ban and the deletion of her Facebook comments.

**IT IS FURTHER ORDERED** that the plaintiff's motion to withdraw or amend her admissions is **DENIED**, except to the extent that any request for admission could be construed as precluding a claim for mental or emotional harm.

**IT IS FURTHER ORDERED** that plaintiffs M.S.A. and E.G.A. are **DISMISSED** as parties.

**FINALLY, IT IS ORDERED** that a telephonic pretrial conference will be held on **February 10, 2022 at 10:30 a.m.** for the purpose of setting this matter for trial.

Dated at Milwaukee, Wisconsin, this 2nd day of February, 2022.

<pre>
                                    s/Lynn Adelman
                                    LYNN ADELMAN
                                    United States District Judge
</pre>